**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania corporation, | ) ) ) ) | |
| Plaintiff-Counterdefendant | ) | Case Number: 1:08-cv-2187 |
| v. | ) | |
| | ) | Judge David H. Coar |
| DISCOVER FINANCIAL SERVICES, | ) | |
| a Delaware corporation; DISCOVER | ) | Magistrate Judge Sidney I. Schenkier |
| BANK, a Delaware chartered bank; | ) | |
| DFS SERVICES LLC, a Delaware limited liability | ) | |
| company; and DISCOVER PRODUCTS, INC., | ) | |
| a Utah corporation, | ) | |
| | ) | |
| Defendants-Counterclaimants | ) | |

**PLAINTIFF-COUNTERDEFENDANT NATIONAL UNION'S ANSWER TO
DEFENDANTS-COUNTERCLAIMANTS' AFFIRMATIVE DEFENSE TO
COMPLAINT FOR DECLARATORY JUDGMENT AND ANSWER AND
<u>AFFIRMATIVE DEFENSES TO COUNTERCLAIM</u>**

Plaintiff-Counterdefendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") for its Answer to Defendants-Counterclaimants' (collectively, "Discover") Affirmative Defense to National Union's Complaint for Declaratory Judgment and Answer and Affirmative Defenses to Discover's Counterclaim states as follows:

<u>**DISCOVER'S AFFIRMATIVE DEFENSE**</u>

Pursuant to the seminal case of *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 186 Ill.2d 127, 150-51, 708 N.E.2d 1122, 1134-35 (Ill. 1999) and its progeny, National Union is estopped from raising policy defenses under the various National Union polices because of its improper handling of Discover's request for coverage for the Phoenix Action.

**ANSWER:** Denied.

## NATURE OF ACTION

1.      This is an action by Discover, as an insured under a National Union insurance policy, against National Union for declaratory judgment and breach of contract.  A controversy exists between Discover and National Union over whether National Union has a duty to defend Discover in a lawsuit styled as *Phoenix Licensing, LLC, et al. v. Chase Manhattan Mortgage Corp., et al.*, filed in the United States District Court for the Eastern District of Texas, Case No. 2:07-cv-387 (TJW/CE) and now consolidated as *In re Phoenix Licensing, L.L.C., Patent Litigation* by the Judicial Panel on Multidistrict Litigation in the United States District Court for the District of Arizona, Case No. 2:08-md-1910 (the "Phoenix Action").  The Phoenix Action alleges that Discover's advertising, marketing and promoting the sale of financial products over the internet, via direct marketing, and by targeted mass-mailing infringes various Phoenix patents, at least two of which, according to Phoenix, cover patented advertising ideas or a patented style of doing business.  Consequently, the Phoenix Action triggers "advertising injury" coverage under the National Union Policy and requires National Union to defend Discover. National Union's refusal to do so constitutes an abandonment of Discover and has left Discover to fend for itself in the Phoenix Action.  Discover, therefore, seeks a declaratory judgment that National Union is required to defend Discover in the Phoenix Action.  Discover also seeks damages for National Union's breach of its contractual agreement to defend Discover in the Phoenix Action.

**ANSWER**:  National Union admits that this is an action against National Union for declaratory judgment and breach of contract, and that a controversy exists between Discover and National Union over whether National Union has a duty to defend Discover in a lawsuit styled as styled as *Phoenix Licensing, LLC, et al. v. Chase Manhattan Mortgage Corp., et al*., filed in the

United States District Court for the Eastern District of Texas, Case No. 2:07-cv-387 (TJW/CE) and now consolidated as *In re Phoenix Licensing, L.L.C., Patent Litigation by the Judicial Panel on Multidistrict Litigation* in the United States District Court for the District of Arizona, Case No. 2:08-md-1910 (the "Phoenix Action").  National Union denies the remaining allegations and legal conclusions of Paragraph 1.

<u>**JURISDICTION AND VENUE**</u>

2.      Counterclaimant Discover Financial Services is a Delaware corporation with its principal place of business in Riverwoods, Illinois.

**ANSWER:**  Admitted.

3.      Counterclaimant Discover Bank is a Delaware charted bank with its principal place of business in Greenwood, Delaware.

**ANSWER:**  Admitted.

4.      DFS Services LLC is a limited liability corporation with its sole member being Discover Financial Services, a publicly traded Delaware corporation with its principal place of business in Riverwoods, Illinois.

**ANSWER:**  Admitted.

5.      Counterclaimant Discover Products, Inc. is a Utah corporation with its principal place of business in Riverwoods, Illinois.

**ANSWER:**  Admitted.

6.      Counterclaimant National Union Fire Insurance Company of Pittsburgh, PA is a Pennsylvania corporation with its principal place of business in New York, New York.

**ANSWER:**  Admitted.

7.      This is an action for breach of contract and declaratory relief pursuant to 28 U.S.C. § 2201.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that complete diversity exists between the parties, and the amount in controversy exceeds the sum of $75,000, exclusive of interest.

**ANSWER:**  Admitted.

8.      This Court has personal jurisdiction over National Union because National Union actively sells insurance policies in the State of Illinois, including the Northern District, and is licensed to do business in the State of Illinois.

**ANSWER:**  Admitted.

9.      Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a) and (c) in that several of the Discover entities reside in the Northern District, the insured risk is substantially in the Northern District of Illinois, and substantial parts of the events giving rise to this claim occurred within this judicial district, including Discover's advertising systems, which are primarily located in and controlled from Riverwoods, Illinois.  The "advertising injury" coverage at issue looks to the location from which the advertising conduct of the insured emanates.

**ANSWER:**  National Union admits that venue is proper in the United States District Court of the Northern District of Illinois pursuant to 28 U.S.C. § 1391.  National Union is without information or knowledge sufficient to form a belief regarding in which judicial district a substantial part of the events giving rise to this claim occurred.  National Union denies the remaining allegations and legal conclusions contained in Paragraph 9.

# FACTS

10.     National Union issued its policy No. BE 357-88-80 as a renewal of BE 357-12-60, effective October 1, 1998, through October 1, 2001, and extended by endorsement through October 1, 2002 (the "Policy").  A true and correct copy of the Policy is attached hereto as Exhibit 1.

**ANSWER:**  Admitted.

11.     Under the Policy, Morgan Stanley Dean Witter & Co. is the named insured, with coverage extended to Discover, which at that time was a wholly owned subsidiary of Morgan Stanley.  (*See* Ex. 1 § IV(E)(1)(a)).

**ANSWER:**  National Union admits that Morgan Stanley Dean Witter & Co. is the named insured on the Policy.  National Union is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 11.

12.     The Policy provides, *inter alia*, the following coverage for "advertising injury" claims:

### Insuring Agreements

**1.     Coverage.**

We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of . . . **Advertising Injury** that takes place during the Policy Period and is caused by an **occurrence** happening anywhere in the world.  The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

. . . .

**II.     Defense.**

**A.**     We shall have the right and duty to defend any claim or **suit** seeking damages covered by the terms and conditions of this policy when . . . (2) damages are sought for . . . **Advertising Injury** covered by this policy but not covered by any underlying insurance

5

listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the **Insured**.

> **B.**     When we assume the defense of any claim or suit:  (1) we will defend any suit against the **Insured** seeking damages on account of . . . **Advertising Injury** even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle a claim as we deem expedient.

. . . .

> **IV.     Definitions.**

> **A.     Advertising Injury** means injury arising solely out of your advertising activities as a result of one or more of the following offenses: . . . (3) **misappropriation of advertising ideas** or **style of doing business** . . . .

. . . .

> **H.     Occurrence** means: . . .(3) as respects **advertising injury**, an offense committed in the course of advertising your goods, products or services that results in **Advertising Injury**.

(Ex. 1 at 1, 3 and 5.)

> **ANSWER:**  National Union admits that the Policy contains the quoted policy language contained in Paragraph 12 to the extent it is quoted accurately, but further states that the quote is incomplete and out of context.  The Policy speaks for itself and must be read and construed as a whole.

## Background Regarding The Underlying Phoenix Action

13.     On August 31, 2007, Phoenix filed its original complaint against Discover.  A true and correct copy of the original complaint is attached hereto as Exhibit 2.

> **ANSWER:**  Admitted.

14.     On November 9, 2007, Phoenix filed its First Amended Complaint in the Phoenix Action (the "Amended Complaint").  A true and correct copy of the Amended Complaint is attached hereto as Exhibit 3.  Both the original and Amended complaints allege, in pertinent part, that Plaintiff Phoenix is the sole holder of the right, title, and interest in the following United States patents:  No. 5,987,434 (titled "Apparatus and Method for Transacting Marketing and

Sales of Financial Products") (the "'434 Patent"); No. 6,076,072 (titled "Method and Apparatus for Preparing Client Communications Involving Financial Products and Services") (the "'072 Patent"); and No. 6,999,938 (titled "Automated Reply Generation Direct Marketing System") (the "'938 Patent") (hereinafter the "Patents-in-Suit"; Exs. 2-3 ¶ 1.).

**ANSWER:**  National Union admits that on November 9, 2007, Phoenix filed its First Amended Complaint in the Phoenix Action, that a true and correct copy of the First Amended Complaint is attached as Exhibit 3 to Discover's Counterclaim, and that the Patents-in-Suit consist of United States Patent Nos. 5,987,434 (entitled "Apparatus and Method for Transacting Marketing and Sales of Financial Products") (the "'434 Patent"); 6,076,072 (entitled "Method and Apparatus for Preparing Client Communications Involving Financial Products and Services") (the "'072 Patent"); and 6,999,938 (entitled "Automated Reply Generation Direct Marketing System") (the "'938 Patent").  Answering further, the original and Amended complaints referenced in Paragraph 14 speak for themselves and are the best evidence of their content and must be read and construed as a whole.  National Union denies any characterization of the original and Amended complaints contained in Paragraph 14 that is inconsistent with the original and Amended complaints.

15.    The complaints also allege that LLP Licensing, LLC is the exclusive licensee of the Patents in Suit.  (*Id*.)

**ANSWER:**  Admitted.

16.    The complaints further allege that Discover has and continues to infringe the Patents In Suit, by among other things using Phoenix's patented technology for advertising the sale of financial products.  (*Id*.)

**ANSWER:**  Denied.

17.     More specifically, the '072 Patent and the '434 Patent claim the patented idea of advertising, marketing and promoting the sale of financial products over the internet, via direct marketing, and by targeted mass-mailing.  Indeed, the '072 Patent states that claimed invention "relates to methods and apparatus for automatically preparing financial product and/or financial service-related communications such as *advertisements, marketing solicitations, financial products sales solicitations, notices and the like for dissemination to clients, potential clients, etc.*"  (Ex. 3, Tab A at Col. 1:1-6) (emphasis added).

**ANSWER:**  National Union admits that the '072 Patent contains the quoted language in Paragraph 17, to the extent that it is quoted accurately.  Answering further, National Union denies Discover's characterizations of the '072 Patent and the '434 Patent and the remaining allegations and legal conclusions contained in Paragraph 17.  Answering further, the language set forth in the patents speaks for itself and the patents are the best evidence of their content and must be read and construed as a whole.

18.     The '434 Patent also clearly purports to encompass advertising activities as evidenced by its field of invention which states "[t]he present invention relates to apparatus and methods for *marketing* financial products such as individual insurance policies."  (Ex. 3, Tab B at Col. 1:1-3) (emphasis added).  Moreover, the detailed description of the preferred embodiment and method provides that "the presently preferred embodiment of the invention comprises an apparatus and method for transacting the *marketing* and sales of financial products."  (*Id*. at Col. 5:44-51) (emphasis added).

**ANSWER:**  National Union admits that the '434 Patent contains the quoted language in Paragraph 18, to the extent that it is quoted accurately.  Answering further, National Union denies Discover's characterizations of the '434 Patent and the remaining allegations and legal

conclusions contained in Paragraph 18. Answering further, the language set forth in the patents speaks for itself and the patents are the best evidence of their content and must be read and construed as a whole.

19.     Numerous of the claims for the '434 Patent also specifically list marketing/advertising activities as part of the claimed invention:

| PATENT | CLAIM | RELEVANT LANGUAGE |
|--------|-------|-------------------|
| '434 | 1 | "An apparatus for using client information about clients in the form of a plurality of client records to automatically select and *present financial products appropriate for each of the clients,* the apparatus comprising . . . means for preparing a client communication for each of the clients which identifies the subset of the financial products for that client" (emphasis added). |
| '434 | 2 | "A method for using client information about clients comprising a plurality of client records *to automatically select and present financial products appropriate for the clients*" (emphasis added). |
| '434 | 8 | "An apparatus for using client information about clients to automatically select and *present financial products appropriate for each of the clients*, the apparatus comprising: . . . means for preparing a client communication for each of the clients which identifies the subset of the financial products for that client" (emphasis added). |

**ANSWER:** National Union admits that the '434 Patent contains the quoted language in Paragraph 19, to the extent that it is quoted accurately. Answering further, National Union denies Discover's characterizations of the '434 Patent and the remaining allegations and legal conclusions contained in Paragraph 19. Answering further, the language set forth in the patents speaks for itself and the patents are the best evidence of their content and must be read and construed as a whole.

20.     Various others claims with the '434 Patent contain similar marketing/advertising activity language. (*See e.g.*, Ex. 3, Tab B at Claim Nos. 14, 15, 16, 19, 28, 42 and 49.)

**ANSWER:** National Union denies Discover's characterizations of the '434 Patent and the legal conclusions contained in Paragraph 20. Answering further, the language set forth in the

patents speaks for itself and the patents are the best evidence of their content and must be read and construed as a whole.

21.    The '072 Patent is equally clearly directed to advertising and marketing.  The underlying invention "relates to methods and apparatus for automatically preparing financial product and/or financial service-related communications *such as advertisements, marketing solicitations, financial products sales solicitations*, notices and the like *for dissemination to* clients, *potential client*, etc."  (Ex. 3, Tab A at Col. 1:12-18) (emphasis added).

**ANSWER:**  National Union admits that the '072 Patent contains the quoted language in Paragraph 21, to the extent that it is quoted accurately.  Answering further, National Union denies Discover's characterizations of the '072 Patent and the remaining allegations and legal conclusions contained in Paragraph 21.  Answering further, the language set forth in the patents speaks for itself and the patents are the best evidence of their content and must be read and construed as a whole.

22.    The '072 Patent goes on to explain that "[t]he importance of widely-distributed written or printed client communications such as advertising, solicitations, etc. is well known in the marketing and advertising field.  Their applicability to the financial products and services industry also is well-known."  (*Id*. at Col. 1:24-29) (emphasis added).  The patent claims to cover "a marked departure from known *marketing* and financial product communication systems … in that they allow for the virtually complete automation of the tasks traditionally performed by people, agents, *salesmen*, and the like, and at substantially greater effort and expense."  (*Id*. at Col. 3:16-21) (emphasis added).

**ANSWER:**  National Union admits that the '072 Patent contains the quoted language in Paragraph 22, to the extent that it is quoted accurately.  Answering further, National Union

denies Discover's characterizations of the '072 Patent and the remaining allegations and legal conclusions contained in Paragraph 22.  Answering further, the language set forth in the patents speaks for itself and the patents are the best evidence of their content and must be read and construed as a whole.

23.     All of the claims of the '072 Patent are directed toward variations on the use of "host vehicles" to send marketing communications to clients and prospective clients.  (*See, e.g., id.* at Claims 1-134.)

**ANSWER:**  National Union denies Discover's characterizations of the '072 Patent and the remaining allegations and legal conclusions contained in Paragraph 23.  Answering further, the language set forth in the patents speaks for itself and the patents are the best evidence of their content and must be read and construed as a whole.

24.     And the '938 Patent, in turn, is directed to "methods and apparatus for automatically preparing replies to each purchase or non-purchase response generated from *mass marketed communications delivered to clients for products or services, such as financial products and/or financial service-related communications*."   (Ex. 3, Tab C at Col. 1:15-20) (emphasis added).

**ANSWER:**  National Union admits that the '938 Patent contains the quoted language in Paragraph 24, to the extent that it is quoted accurately.  Answering further, National Union denies Discover's characterizations of the '938 Patent contained in Paragraph 24.  Answering further, the patents are the best evidence of their content and must be read and construed as a whole.

### National Union's Duty To Defend

25.     The Policy requires that National Union defend Discover where a claim or suit against Discover alleges facts potentially constituting an advertising injury that arises solely out of Discover's advertising activities, provided that such advertising activities allegedly involve the misappropriation of another's advertising ideas or style of doing business, and provided further that the advertising injury is not covered by any underlying insurance.

**ANSWER:** Denied.

26.     Here, all three of the Patents In Suit reflect a claimed advertising idea or style of doing business.  Moreover, the original and Amended complaints allege that Discover has and continues to infringe "Phoenix's patented technology in products and services that they make, use import, sell and offer to sell, without Plaintiffs' permission." (Ex. 2-3 ¶ 1).  Both complaints further allege facts that constitute advertising injury to Phoenix because at least some of the Patents In Suit can be infringed only by advertising activity.

**ANSWER:**  National Union admits that the original and Amended complaints allege that Discover has and continues to infringe "Phoenix's patented technology in products and services that they make, use, import, sell, and offer to sell…"  However, the quotation is incomplete and out of context.  The original and Amended complaints speak for themselves.  National Union denies the remaining allegations and legal conclusions contained in Paragraph 26.

27.     The alleged advertising injury is not covered by any underlying insurance available to Discover.

**ANSWER:**  National Union denies that the original and Amended complaints allege an advertising injury.  National Union is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 27.

28.    Under the foregoing circumstances, National Union has a duty to defend Discover in the Phoenix Action.

**ANSWER:**  Denied.

### National Union's Breach Of Its Duty

29.    Discover tendered the Phoenix Acton to its primary insurer, Liberty Mutual Insurance Company, which declined to defend Discover.  After Liberty Mutual's denial, Discover tendered the Phoenix Action to National Union and requested that National Union defend the Phoenix Action.

**ANSWER:**  National Union admits that Discover tendered the Phoenix Action to it and requested that National Union defend Discover in the Phoenix Action.  National Union is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 29.

30.    National Union declined to defend Discover in the Phoenix Action.  Abandoned by National Union, Discover is defending itself in the Phoenix Action.

**ANSWER:**  National Union admits that it declined to defend Discover in the Phoenix Action.  Answering further, National Union states that it had no such duty to defend Discover in the Phoenix Action.  National Union is without information or knowledge sufficient to form a belief as to whether Discover is defending itself in the Phoenix Action.  National Union denies the remaining allegations contained in Paragraph 30.

31.    Discover has complied with all of its obligations under the Policy.

**ANSWER:**  Denied.

## COUNT I
## <u>DECLARATORY JUDGMENT</u>

32.     Discover incorporates by this reference each and every allegation set forth in the preceding paragraphs of this Counterclaim as though fully realleged here.

**ANSWER:**  National Union incorporates by this reference each and every response set forth in the preceding paragraphs of this Response as though fully reasserted here.

33.     An actual controversy exists between the parties.  This Court has jurisdiction to enter a declaratory judgment concerning the respective rights and duties of the parties.

**ANSWER:**  Admitted.

34.     National Union breached its duty to defend Discover in the Phoenix Action.  Moreover, despite Discover's request for a defense, National Union has abandoned Discover and has left Discover to defend itself in the Phoenix Action.

**ANSWER:**  Denied.

35.     It is necessary and proper under the circumstances alleged herein that this Court adjudicate and declare that National Union:  (a) had and has a duty to defend Discover under the Policy for all claims asserted in the Phoenix Action; (b) had and has breached its duty to defend Discover in the Phoenix Action; (c) had and has a duty to pay for Discover's retained counsel, which has been defending Discover against the claims made by Phoenix; and (d) is estopped from asserting any defenses to Discover's claim that National Union is obligated to defend Discover in the Phoenix Action.

**ANSWER:**  Denied.

## COUNT II
## BREACH OF CONTRACT

36.     Discover incorporates by this reference each and every allegation set forth in the preceding paragraphs of this Counterclaim as though fully realleged here.

**ANSWER:**  National Union incorporates by this reference each and every response set forth in the preceding paragraphs of this Response as though fully reasserted here.

37.     National Union owed Discover a duty of defense in the Phoenix Action under the Policy.

**ANSWER:**  Denied.

38.     National Union breached its duty to defend Discover in the Phoenix Action.

**ANSWER:**  Denied.

39.     As a direct and proximate result of the breach of contract by National Union, Discover has suffered and continues to suffer damages in the form of defense costs and other related expenses.

**ANSWER:**  Denied.

## NATIONAL UNION'S AFFIRMATIVE DEFENSES

National Union hereby sets forth its separate and distinct defenses to Discover's Counterclaim.  National Union sets forth the following matters to apprise Discover of certain potentially applicable defenses.  By listing any matter as an affirmative defense, National Union does not assume the burden of proving any matter upon which Discover bears the burden of proof under the applicable law.  National Union specifically reserves all rights to withdraw any such potential or conditional affirmative defense as continuing discovery in this matter may dictate.

### First Affirmative Defense

Discover's Counterclaim fails to state causes of action upon which relief may be granted.

### Second Affirmative Defense

The obligations of National Union, to the extent any exist, are defined, limited and controlled by the terms of Commercial Umbrella Policy No. BE 357-88-80 (the "National Union Policy"), including, but not limited to, the coverages therein, the limits, exclusions, endorsements, conditions, along with all other terms set forth therein.

### Third Affirmative Defense

To the extent that Discover Financial Services, Discover Bank, DFS Services, LLC and/or Discover Products, Inc. does/do not qualify as Named Insureds or Insureds under the National Union Policy, no coverage is available to them under the National Union Policy.

### Fourth Affirmative Defense

The National Union Policy is only potentially implicated, in the first instance, upon exhaustion of the Retained Limit to which it is excess.  The National Union Policy is not implicated with respect to the claims asserted in the Phoenix Action, to the extent the underlying Retained Limit has not been exhausted.

### Fifth Affirmative Defense

The National Union Policy's Advertising Injury coverage is limited to injury caused by a covered offense committed during the policy period in the course of advertising the Named Insured's goods, products or services. To the extent the Phoenix Action does not seek damages for injury arising out of a covered offense committed during the policy period in the course of advertising the Named Insured's goods, products or services, it does not implicate Advertising Injury coverage under the National Union Policy.

## Sixth Affirmative Defense

To the extent the Phoenix Action does not seek damages for injury arising solely out of advertising activities of the Named Insured, it does not implicate Advertising Injury coverage under the National Union Policy.

## Seventh Affirmative Defense

Coverage for the Phoenix Action is barred by the exclusion in the National Union Policy that precludes coverage for Advertising Injury arising out of the oral or written publication of material, if done by or at the direction of the Insured with knowledge of its falsity.

## Eighth Affirmative Defense

Coverage for Phoenix Action is barred by the exclusion in the National Union Policy that precludes coverage for Advertising Injury arising out of the oral or written publication of material whose first publication took place before the beginning of the policy period.

## Ninth Affirmative Defense

Coverage for the Phoenix Action is barred by the exclusion in the National Union Policy that precludes coverage for Advertising Injury arising out of or by reason of the purchase, sale, offer of sale or solicitation of any security, debt, bank deposit or financial interest or instrument.

## Tenth Affirmative Defense

The National Union Policy does not provide coverage for liability arising out of conduct that is uninsurable as a matter of public policy.

## Eleventh Affirmative Defense

The National Union Policy does not provide coverage in whole or in part for damages an Insured failed to mitigate, minimize or avoid.

### Twelfth Affirmative Defense

To the extent that some or all of the matters for which coverage is sought under the National Union Policy are in the nature of fines, penalties, punitive damages or exemplary damages, coverage is barred by public policy.

### Thirteenth Affirmative Defense

The National Union Policy does not provide coverage for liability of which an Insured was aware, in whole or in part, prior to its inception, including, but not limited to, any known loss(es), known risk(s), and/or loss(es)-in-progress.

### Fourteenth Affirmative Defense

The National Union Policy does not provide coverage for claims for equitable relief.

### Fifteenth Affirmative Defense

National Union denies any and all liability, but to the extent that National Union is found liable for any amounts in defense and/or indemnity, National Union's liability is limited in accordance with the "other insurance" provisions contained in the National Union Policy to the extent that valid and collectible insurance provided by other insurers is, or may be, available.

### Sixteenth Affirmative Defense

National Union denies any and all liability, but to the extent that National Union is found liable for any amounts in defense and/or indemnity, National Union's liability is limited by the Limits of Liability provisions set forth in the National Union Policy.

### Seventeenth Affirmative Defense

National Union denies any and all liability, but to the extent that National Union is found liable for any amounts in defense and/or indemnity, there is no coverage afforded by the National

Union Policy for damages and/or defense costs incurred prior to the time that the Phoenix Action was tendered to National Union under the National Union Policy.

### Eighteenth Affirmative Defense

National Union hereby specifically reserves its right to amend these affirmative defenses as additional facts are obtained through further investigation and discovery.

WHEREFORE, National Union Fire Insurance Company of Pittsburgh, PA hereby demands judgment in its favor and requests that this Court award National Union such other and further relief as this Court deems just and proper, including awarding National Union its attorneys' fees and costs.

Dated:  July 21, 2008

Respectfully submitted,

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

By:      s/Richard H. Nicolaides, Jr.

One of its Attorneys

Richard H. Nicolaides, Jr.
Matthew J. Fink
Daniel I. Graham, Jr.
BATES & CAREY LLP
191 North Wacker, Suite 2400
Chicago, IL 60606
Ph.  312.762.3100
Fax  312-762-3200
rnicolaides@batescarey.com
mfink@batescarey.com
dgraham@batescarey.com

261160 / 7378