**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania corporation,

Plaintiff-Counterdefendant,

DISCOVER FINANCIAL SERVICES, a Delaware corporation; DISCOVER BANK, a Delaware chartered bank; DFS SERVICES LLC, a Delaware limited liability company; and DISCOVER PRODUCTS, INC., a Utah corporation,

Defendants-Counterclaimants.

Case No.: 08-CV-2187

Judge David H. Coar
Magistrate Judge Sidney I. Schenkier

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS-COUNTERCLAIMANTS' MOTION FOR SUMMARY JUDGMENT REGARDING PLAINTIFF-COUNTERDEFENDANT'S DUTY TO DEFEND**

Defendants-Counterclaimants Discover Financial Services, Discover Bank, DFS Services LLC and Discover Products, Inc. (collectively "Discover") respectfully submit this Memorandum in support of their Motion for Summary Judgment Regarding Plaintiff-Counterdefendant National Union Fire Insurance Company of Pittsburgh, PA's ("National Union") duty to defend Discover against the action titled *Phoenix Licensing, LLC, et al. v. Chase Manhattan Mortgage Corp., et al.*, filed in the United States District Court for the Eastern District of Texas, Case No. 2:07-cv-387 (TJW/CE), and now consolidated as *In re Phoenix Licensing, L.L.C., Patent Litigation* by the Judicial Panel on Multidistrict Litigation in the United States District Court for the District of Arizona, Case No. 2:08-md-1910 (the "Phoenix Action").

## INTRODUCTION

This case involves National Union's breach of its contractual duty to defend and indemnify Discover against an "advertising injury" within the meaning of National Union's insurance policy issued to Discover. An "advertising injury" under National Union's insurance

policy includes claims that the insured, here Discover, misappropriated "advertising ideas or a style of business." Discover has been sued in the Phoenix Action for allegedly misappropriating Phoenix's patented advertising ideas and/or patented style of business. Specifically, Phoenix alleges, among other things, that Discover's advertising, marketing, and promoting the sale of certain products over the Internet, via direct marketing, and by targeted mass-mailing infringes various Phoenix patents, at least two of which, according to Phoenix, cover patented advertising ideas or a patented style of doing business. Despite the plain language of National Union's contractual commitment under its insurance policy, National Union has refused to defend Discover.

## THE UNDISPUTED FACTS

### I. National Union's Umbrella Insurance Policy.

On or before October 1, 1998, National Union issued a commercial umbrella insurance policy to Morgan Stanley Dean Witter & Co. (Discover's Statement of Undisputed Facts (hereafter "SUF") ¶ 10). National Union issued its policy No. BE 357-88-80 as a renewal of BE 357-12-60, effective October 1, 1998, through October 1, 2001, and extended by endorsement through October 1, 2002 (the "Policy"). (*Id.* ¶ 11.) Discover was an insured at the time the Policy issued because it was a subsidiary of Morgan Stanley. (*Id.* ¶ 12.)

The Policy provides, *inter alia,* the following coverage for "advertising injury" claims:

> **1. Coverage.**
>
> We will pay on behalf of the *Insured* those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the *Insured* under an *Insured Contract* because of . . . *Advertising Injury* that takes place during the Policy Period and is caused by an *occurrence* happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.
>
> . . . .

> **II. Defense.**
>
> **A.** We shall have the right and duty to defend any claim or *suit* seeking damages covered by the terms and conditions of this policy when . . . (2) damages are sought for . . . *Advertising Injury* covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the *Insured.*
>
> **B.** When we assume the defense of any claim or suit: (1) we will defend any suit against the *Insured* seeking damages on account of . . . *Advertising Injury* even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle a claim as we deem expedient.
>
> . . . .
>
> **IV. Definitions.**
>
> **A.** *Advertising Injury* means injury arising solely out of your advertising activities as a result of one or more of the following offenses: . . . (3) misappropriation of advertising ideas or style of doing business . . . .
>
> . . . .
>
> **H.** *Occurrence* means: . . . (3) as respects *advertising injury*, an offense committed in the course of advertising your goods, products or services that results in *Advertising Injury*.

(*Id*. ¶ 13) (emphasis added).

## II. Background Regarding the Underlying Phoenix Action.

On August 31, 2007, Phoenix filed its original complaint against Discover. (*Id*. ¶ 14.) On November 9, 2007, Phoenix filed its First Amended Complaint in the Phoenix Action (the "Amended Complaint"). (*Id*. ¶ 15.) Both complaint versions allege, in pertinent part, that Plaintiff Phoenix is the sole holder of the right, title, and interest in the following United States patents: No. 5,987,434 (titled "Apparatus and Method for Transacting Marketing and Sales of Financial Products") (the "'434 Patent"); No. 6,076,072 (titled "Method and Apparatus for Preparing Client Communications Involving Financial Products and Services") (the "'072 Patent"); and No. 6,999,938 (titled "Automated Reply Generation Direct Marketing System")

(the "'938 Patent") (hereinafter the "Patents In Suit"; *id*. ¶ 16.) Both complaint versions allege that LPL Licensing, LLC is the exclusive licensee of the Patents In Suit. (*Id*. ¶ 17.)

Both complaint versions also allege that Discover's use of Phoenix's patented technology for advertising the sale of financial products infringes the Patents In Suit. (*Id*. ¶ 18.) Specifically, both complaints allege in pertinent part that Discover has infringed the '072 Patent which states that its claimed invention "relates to methods and apparatus for automatically preparing financial product and/or financial service-related communications such as *advertisements, marketing solicitations, financial products sales solicitations*, notices and the like for dissemination to clients, potential clients, etc." (*Id*. ¶ 19, emphasis added.)

The '072 Patent goes on to explain that "[t]he importance of widely-distributed written or printed client communications such as advertising, solicitations, etc. is well known in the marketing and advertising field. Their applicability to the financial products and services industry also is well known." (*Id*. ¶ 20.) The patent claims to cover "a marked departure from known *marketing* and financial product communication systems … in that they allow for the virtually complete automation of the tasks traditionally performed by people, agents, *salesmen*, and the like, and at substantially greater effort and expense." (*Id*., emphasis added.) All of the claims of the '072 Patent are directed toward variations on the use of "host vehicles" to send marketing communications to clients and prospective clients. (*Id*.)

Both complaint versions also allege that Discover is infringing the '434 Patent, whose field of invention purports to encompass advertising activities by stating that "[t]he present invention relates to apparatus and methods for *marketing* financial products such as individual insurance policies." (*Id*. ¶ 21, emphasis added.) Moreover, the detailed description of the '434 Patent's preferred embodiment and method provides that "the presently preferred embodiment of

the invention comprises an apparatus and method for transacting the *marketing* and sales of financial products." (*Id*., emphasis added.)

Numerous claim descriptions of the preferred embodiment of the '434 Patent also claim the invention of an "advertising activity" or "style of doing business" as those terms are used in the insurance policy National Union issued to Discover. For example:

- Claim 1 of the '434 Patent: "An apparatus for using client information about clients in the form of a plurality of client records to automatically select and *present financial products appropriate for each of the clients*, the apparatus comprising . . . means for preparing a client communication for each of the clients which identifies the subset of the financial products for that client" (emphasis added);

- Claim 2 of the '434 Patent: "A method for using client information about clients comprising a plurality of client records to automatically select and *present financial products appropriate for the clients*" (emphasis added); and

- Claim 8 of the '434 Patent: "An apparatus for using client information about clients to automatically select and *present financial products appropriate for each of the clients*, the apparatus comprising: . . . means for preparing a client communication for each of the clients which identifies the subset of the financial products for that client" (emphasis added) (*Id*. ¶ 22.)

Various other claims within the '434 Patent also contain similar marketing/ advertising activity language. (*Id*. ¶ 23.) The above-mentioned advertising activity allegations were undeniably a part of Phoenix's lawsuit since it filed its original and amended complaints against Discover.

## III. Discover's Tender Of The Phoenix Action To National Union And National Union's Refusal To Defend.

After being served with the Phoenix Action, Discover tendered the matter to its underlying insurance carrier Liberty Mutual Insurance Company ("Liberty Mutual"). (*Id*. ¶ 26.) Liberty Mutual declined to defend Discover pursuant to its policies' blanket coverage exclusions for patent infringement claims arising from "bodily injury," "property damage," "advertising injury" or "personal injury." (*Id*. ¶ 28.)

Discover subsequently provided National Union notice of the Phoenix Action and requested that National Union defend the Phoenix Action. (*Id.* ¶ 29.) National Union's policy, unlike Liberty Mutual's policy, does not exclude coverage for patent infringement claims. National Union nevertheless refused to defend Discover in the Phoenix Action. (*Id*.) Discover, therefore, defended itself in the Phoenix Action. (*Id.* ¶ 30.)

**ARGUMENT**

**I. This Insurance Coverage Dispute Is A Proper Matter For Summary Judgment And Should Be Governed By Illinois Law.**

"The interpretation of an insurance policy is a question of law that is an appropriate subject for disposition by way of summary judgment." *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000); *see also Crum & Forster Mgrs. Corp. v. Resolution Trust Corp*. 156 Ill. 2d 384, 391, 620 N.E.2d 1073, 1077 (1993) ("The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment."). Once a motion for summary judgment has been filed, "the burden shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial." *Liu v. T & H Machine, Inc.*, 191 F.3d 790, 796 (7th Cir. 1999). The non-moving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits, but must support the contentions with proper documentary evidence. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

The relevant Policy does not contain a choice-of-law provision. Therefore, a federal court sitting in diversity must look to the conflict-of-law rules of the forum state for the applicable substantive law. *Jupiter*, 225 F.3d at 873, *citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Here, the forum state is Illinois. "When an insurance policy lacks a

choice-of-law provision, Illinois courts employ a 'most significant contacts' test to determine the governing substantive law for the contract." *Jupiter*, 225 F.3d at 873. Factors considered under this analysis are: (1) the location of the subject matter; (2) the place of delivery of the contract; (3) the domicile of the insured or of the insurer; (4) the place of the last act to give rise to a valid contract; (5) the place of performance; or (6) other place bearing a rational relationship to the general contract. *Id., citing Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 188 Ill. 2d 520, 655 N.E.2d 842, 845 (1995).

An application of the above first, third, and sixth factors demonstrate that this matter is properly governed by Illinois law. Discover's disputed Internet advertising system primarily emanates from and is controlled from Riverwoods, Illinois. (SUF ¶ 9.) DFS Services LLC's and Discover Products Inc.'s principal place of business are in Riverwoods, Illinois. (*Id*. ¶¶ 4-5.) Moreover, the insured risk and substantial parts of the events giving rise to this claim occurred in Illinois. (*Id*. ¶ 9.) Lastly, the "advertising injury" coverage at issue looks to the location (i.e., Illinois) from which the advertising conduct of the insured emanates.

**II. National Union Has A Duty To Defend Discover As A Matter Of Law.**

Under Illinois law, the duty to defend is broader than the duty to indemnify, and arises whenever a complaint contains any factual allegation stating a claim even potentially within the policy's coverage. *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 193-94, 355 N.E.2d 24, 28 (1976) ("In determining whether the insurer owes a duty to the insured to defend an action brought against him, it is the general rule that the allegations of the complaint determine the duty. If the complaint alleges facts within the coverage of the policy or *potentially* within the coverage of the policy the duty to defend has been established."). Only if the policy and the complaint, jointly considered, clearly do not cover any of the alleged claims will an insurer be

relieved of its duty to defend. *Illinois Emasco Ins. Co. v. Northwestern Nat'l Cas. Co.*, 337 Ill. App. 3d 356, 360, 785 N.E.2d 905, 908 (1st Dist. 2003).

**A. The Phoenix Action Alleges Advertising Injury.**

In relevant part, the Policy defines a covered "advertising injury" as an "injury arising solely out of . . . advertising activities" that results from a "[m]isappropriation of advertising ideas or style of doing business." (SUF ¶ 13.) The seminal case discussing insurance coverage for advertising injuries is *Amazon.com Int'l Inc. v. American Dynasty Surplus Lines Ins. Co.*, 120 Wash. App. 610, 85 P.3d 974 (Wash. Ct. App. 2004). In *Amazon*, the court stated that "advertising" normally refers to "any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business." *Id*. at 617, 85 P.3d at 976; *see also Erie Ins. Group v. Sear Corp.*, 102 F.3d 889, 894 (7th Cir. 1994) (defining advertising as the "active solicitation of business").

No doubt exists, therefore, that the Discover activity accused in the Phoenix Action involves "advertising activity" as that term is used in the National Union insurance policy. Both complaint versions allege that Discover's use of Phoenix's patented technology for advertising the sale of financial products infringes the Patents In Suit. (*Id*. ¶ 18.) Indeed, both complaint versions allege in pertinent part that Discover has infringed the '072 Patent which states that its claimed invention "relates to methods and apparatus for automatically preparing financial product and/or financial service-related communications such as *advertisements*, *marketing solicitations*, *financial products sales solicitations*, notices and the like for dissemination to clients, potential clients, etc." (*Id*. ¶ 19, emphasis added.) Phoenix thereby attacked the manner in which Discover solicits business. Under all accepted definitions, this accused activity is "advertising activity."

**B. The Phoenix Action Alleges An Injury Arising Solely Out Of Advertising Activities.**

The Policy requires that the alleged advertising injury arise "solely out of advertising activities." (SUF ¶ 13.) This requirement has been interpreted by two federal courts in cases involving identical insurance policy language. In *Hooters of Augusta, Inc. v. American Globe Ins. Co.*, 272 F. Supp. 2d 1365 (S.D. Ga. 2003), the court held that the arising solely out of language requires only a "causal connection" between the injury claimed and the advertising injury. *Id.* at 1374 ("The requirement that the Court find a causal connection stems from the policy's declaration that an 'Advertising Injury' is an 'injury arising solely of out [the Insured's] advertising activities. . . .'"). Similarly, in *Discover v. National Union*, 527 F. Supp. 2d 806, 820 (N.D. Ill. 2007) (appeal pending), the court held that this language requires that the advertising activities at issue must be the "sole cause" of the injury.

Under either of these definitions, the Phoenix Action meets the arising solely out of advertising activities requirement. More specifically, as demonstrated by the allegations in Phoenix's complaints, as well as the patent claims and the specification descriptions in the preferred embodiment of the '072 and '434 Patents (*see* pp. 4-5 *supra*), the Phoenix Action complains of injuries solely caused by Discover's alleged infringement of patented Internet advertising. Indeed, the Phoenix Action does not merely allege injury from misappropriation of Phoenix's patented technology, but from Discover's actual use of such technology to allegedly advertise and promote goods and services for sale using its web-based "*advertisements, marketing solicitations, financial products sales solicitations*, notices and the like." (SUF ¶ 19, emphasis added.)

Phoenix's claim of infringement succeeds only if each element of the patent claim is present in the accused method or process. *Seal-Flex, Inc. v. Athletic Track and Court Constr.*,

172 F.3d 836, 842 (Fed. Cir. 1999). Discover's alleged infringement of Phoenix's '072 and '434 Patents requires (as claim limitations) advertising activity that is dependent for any injury (i.e., infringement) on Discover's alleged "wrongful taking of the manner by which another advertises its goods or services or the wrongful taking of an idea about the solicitation of business." *Amazon v. American Dynasty*, 120 Wash. App. at 616, 85 P.3d at 976 (Wash. Ct. App. 2004). Phoenix's alleged injury is causally connected to, and indeed solely caused by, Discover's alleged advertising activities. It cannot be caused by anything else because anything else would not infringe Phoenix's '072 and '434 Patents.

**C. The Phoenix Action Alleges An Injury That Results From A Misappropriation Of Advertising Ideas Or Style Of Doing Business.**

Although the Policy does not define "misappropriation of an advertising idea," courts have done so, concluding that such "misappropriation" may be accomplished by: (1) the "wrongful taking of another's manner of advertising," (2) "the wrongful taking of an idea concerning the solicitation of business and customers," or (3) by "the wrongful taking of the manner by which another advertises its goods or services." *Amazon.com v. American Dynasty*, 120 Wash. at 616, 85 P.3d at 976 (citations omitted); *Discover v. National Union*, 527 F. Supp. 2d at 824; *see also Winklevoss Consultants, Inc. v. Fed. Ins. Co.*, 991 F. Supp 1024, 1038 (noting that the Seventh Circuit considers advertising to require the active solicitation of business and concluding that the broadest reading of "misappropriating advertising ideas is that the insured wrongfully took an idea about the solicitation of business").

Courts agree that patent infringement "may constitute an advertising injury where an entity uses an advertising technique that is itself patented." *Amazon*, 120 Wash. App. at 616, 85 P.3d at 976, *quoting Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1506 (9th Cir. 1994); *see also Amazon.com Inc. v. Atlantic Mut. Ins. Co.*, 2005 WL 1711966, at *5 (W.D. Wash. July 21,

2005). *Cf., Hyundai Motor America v. National Union Fire Ins. Co. of Pittsburgh, PA, et al.*, SACV 08-00020-JVS (RNBx) (C.D. Cal., Aug. 19, 2008).[1] Further, if the insured took an idea for soliciting business or an idea about advertising, then the claim is also covered. *Amazon*, 2005 WL 1711966 at *5, *citing Heritage Mut. Ins. Co. v. Advanced Polymer Tech., Inc.*, 97 F. Supp. 2d 913, 927 (S.D. Ind. 2000).

The case of *Amazon.com*, whose facts are analogous to the present matter, demonstrates how patent infringement may constitute an advertising injury arising out of the misappropriation of advertising ideas or style of doing business. *Amazon.com* involved an underlying lawsuit against several defendants, including the Internet books and music provider Amazon by Intouch Group ("Intouch"). *Amazon.com*, 120 Wash. App. at 614, 85 P.3d at 975. As the holder of patents for interactive music preview technology that enables customers to preview music products before purchasing them, Intouch alleged that Amazon infringed its patents by allowing its customers to sample music products available for sale on Amazon.com. (*Id*.) When Amazon tendered its defense to its commercial general liability insurer and its excess carrier, both insurers refused to defend. (*Id*.) Amazon then sought declaratory relief against its excess insurer. The latter settled by paying Amazon's defense costs in exchange for Amazon's assignment of its rights against its general liability insurer. (*Id*.)

Amazon's excess insurer then sued Amazon's general liability insurer, alleging that the general liability insurer should have defended Amazon because Intouch's allegations amounted

[1] *Hyundai* is distinguishable. The *Hyundai* court denied the insured's request for advertising injury coverage on grounds not present here. First, the court held that the underlying patent infringement action "is not tethered to any actual statement" that Hyundai misappropriated an advertising idea. (Tab D at 5.) Second, no causal connection existed in *Hyundai* between the alleged injury and Hyundai's advertising activity because "Hyundai could have infringed Orion's patents without ever advertising its product to consumers." (*Id*. at 7.) Here, by contrast, several of the patent claims that Discover is accused of infringing expressly cover advertising activity as their claim limitations. (*See* at 4-5 *supra*.) And, critically, because the patent claims allegedly infringed by Discover read on advertising activity, settled patent law doctrine holds that Discover could not have infringed the '072 or '434 Patents without advertising its products to consumers in an allegedly infringing manner. (*See* at 9-10 *supra*.)

to an advertising injury. On appeal from summary judgment in favor of Amazon's general liability insurer, the court reversed. (*Id*. at 616-617, 85 P.3d at 976-977.) In reaching its holding that Intouch alleged an advertising injury that arose from a misappropriation of an advertising idea, the court reminded that "patent infringement may constitute an advertising injury *where an entity uses an advertising technique that is itself patented.*" (*Id.*) (emphasis in original). Then, construing the pleadings liberally as required, the court held that "Intouch alleged that its patented preview technology was an element of Amazon's advertisement." *Id*., *citing Green Mach. Corp. v. Zurich-American Ins. Group*, 313 F.3d 837, 839 (3d Cir. 2002). Intouch, therefore, "alleged misappropriation of an idea concerning the solicitation of business and customers." (*Id*. at 617, 85 P.3d at 977.)

Like Intouch's allegations against Amazon, the Phoenix Action alleges, among other things, that Discover's use of its Internet-based advertising systems infringed various Phoenix patents, some of which, according to Phoenix, cover patented advertising ideas or a patented style of doing business. The Phoenix Action alleges, in pertinent part, that Discover's Internet advertising infringed the '072 Patent which, claims an invention that "relates to methods and apparatus for automatically preparing financial product and/or financial service-related communications such as *advertisements, marketing solicitations, financial products sales solicitations*, notices and the like for dissemination to clients, potential clients, etc." (SUF ¶ 19, emphasis added.) The '434 Patent claims an invention that "relates to apparatus and methods for *marketing* financial products such as individual insurance policies." (*Id*. ¶ 21, emphasis added.) The '434 Patent's detailed description of the preferred embodiment and method provides that "the presently preferred embodiment of the invention comprises an apparatus and method for transacting the *marketing* and sales of financial products." (*Id*., emphasis added.)

The Phoenix Action also alleges that Discover's offering of financial products to consumers via its web-based purchasing system infringes the Patents In Suit (*id*. ¶ 18), thereby further crystallizing how its purportedly patented Internet-based advertising technology is an element of Discover's allegedly infringing technology. As demonstrated by the plain language of the allegedly infringed '072 and '434 Patents, and the specification descriptions in the '434 Patent's preferred embodiments (*see* pp. 4-5 *supra*), these patents claim the invention of an "advertising activity" or "style of business" as those terms are used in the Policy. Consequently, the Phoenix Action triggers National Union's duty under the Policy to defend Discover against an asserted "advertising injury."

**III. National Union's Policy Defenses Are Without Merit As A Matter Of Law.**

National Union alleges that it has no duty to defend Discover in the Phoenix Action because: (a) Discover purportedly failed to exhaust its insurance policies' underlying retained limits (Compl. ¶¶ 35-36); (b) the policies exclude coverage for advertising injury arising out of the purchase, sale, offer of sale or solicitation of any security, debt, bank deposit, or financial interest or instrument (*id*. ¶¶ 41-44); (c) the 2005-08 policies exclude coverage for advertising injury arising out of patent infringement (*id*. ¶¶ 46-49); (d) the policies exclude coverage for advertising injury arising out of any intentional publication of material by the insured with knowledge of its falsity (*id*. ¶¶ 51-55); and (e) the policies exclude coverage for advertising injury arising out of any publication of material that took place before (*id*. ¶¶ 56-59) or after (*id*. ¶¶ 61-62) the policy period. None of these allegations against Discover's coverage have merit.

Discover requested that National Union defend it against the Phoenix Action pursuant to National Union's obligations under the terms of the policy National Union issued to Discover effective October 1, 1998, through October 1, 2002. Those of National Union's allegations that

are based on exclusions in subsequent policies issued by National Union to Discover are simply irrelevant. (*Id.* ¶¶ 39, 43-44, 47-49, 53-55, 58-59, and 62.)

Those of National Union's objections to coverage that actually relate to the relevant Policy are mistaken. For example, National Union's allegation that Discover failed to exhaust its Policy's underlying retained limits is wrong because, after being served with the Phoenix Action, Discover tendered the matter to its underlying insurance carrier Liberty Mutual, which refused to defend Discover pursuant to its policy's blanket coverage exclusions for patent infringement claims. (*Id.* ¶¶ 27, 29.) National Union was required to defend Discover once Liberty Mutual denied coverage.

National Union's allegation that the Policy's "financial interest or instrument" exclusion applies to its duty to defend Discover against the Phoenix Action is wrong. Discover's advertisement of financial products to consumers on its website is not tantamount to a secured transaction in which a "security, debt, bank deposit, or financial interest or instrument" is negotiated. If this were not so, and the exclusion relied on by National Union did apply to Discover's website business, Discover would have no coverage for virtually all of its activities, and the remaining terms of the Policy that promise coverage would be illusory. *See Jewelers Mut. Ins. Co. v. Firstar*, 213 Ill. 2d 58, 65, 820 N.E.2d 411, 411 (2004) ("A party cannot promise to act in a certain manner in one portion of a contract and then exculpate itself from liability for breach of that very promise in another part of the contract"); *Shorr Paper Products, Inc. v. Aurora Elevator, Inc.*, 198 Ill. App. 3d 9, 13-14, 555 N.E.2d 735, 737-738 (2d Dist. 1990) (criticizing the defendant for focusing solely on exculpatory provision of contract to the exclusion of its specifically articulated obligations, noting that such an interpretation would render defendant's contractual duties illusory). The Policy's "financial interest or instrument"

exclusion has no application to Discover's web-based consumer product advertisements, nor could it. At an absolute minimum, this exclusion is ambiguous and must be interpreted against National Union. *Tribune v. Allstate Ins. Co.*, 306 Ill. App. 3d 779, 786 (1st Dist. 1999), *cert. denied*, 186 Ill. 2d 590, 715 N.E.2d 263, 269 (1999) ("Where an insurance contract is ambiguous and other evidence does not resolve the ambiguity, the court must adopt any reasonable interpretation the policyholder suggests.")

National Union's allegation that the Policy's "intentional acts" exclusion applies is also wrong. Prior to being named as a defendant in the Phoenix Action, Discover had no knowledge that its website could purportedly infringe any of Phoenix's patents nor did it know of a known loss that required reporting to National Union. (SUF ¶ 24.)

Finally, National Union's allegation that the Policy's coverage exclusion for advertising injury that occurred before or after the policy period applies to its duty to defend Discover against the Phoenix Action is also wrong. The '434 and '072 Patents that are purportedly infringed by Discover's advertising activities issued on November 16, 1999, and June 13, 2000, respectively. The National Union Policy at issue took effect on October 1, 1998, and expired October 1, 2002. (*Id.* ¶¶ 10-11.) Since a patent cannot be infringed before it issues, Discover could not have infringed even the earlier issued '434 Patent prior to November 16, 1999 – over a year after it was already insured under the Policy. *See Amazon.com Inc. v. Atlantic Mut. Ins. Co.*, 2005 WL 1711966, at *8 (W.D. Wash. 2005).

**CONCLUSION**

Discover respectfully requests that this Court grant it summary judgment on the issue of National Union's duty to defend.

DATED: September 8, 2008

DISCOVER FINANCIAL SERVICES, DISCOVER BANK, DFS SERVICES LLC, and DISCOVER PRODUCTS, INC.

By: /s/ Kimball R. Anderson
One of Their Attorneys

Kimball R. Anderson
Samuel Mendenhall
Giel Stein
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
(312) 558-5600 (Telephone)
(312) 558-5700 (Facsimile)
kanderson@winston.com
smendenhall@winston.com
gstein@winston.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2008, I electronically filed Discover Financial Services, Discover Bank, DFS Services LLC, and Discover Products, Inc.'s MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS-COUNTERCLAIMANTS' MOTION FOR SUMMARY JUDGMENT REGARDING PLAINTIFF-COUNTERDEFENDANT'S DUTY TO DEFEND with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Richard H. Nicolaides, Jr.
Matthew J. Fink
Daniel I. Graham, Jr.
BATES & CAREY LLP
191 N. Wacker, Suite 2400
Chicago, Illinois 60606
(312) 762-3100 (Telephone)
(312) 762-3200 (Facsimile)

/s/ Samuel Mendenhall