**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania corporation )))) | |
| Plaintiff-Counterdefendant, )) | Case No.:  1:08-cv-02187 |
| v. )) | Judge David H. Coar<br>Magistrate Judge Sidney I. Scheniker |
| DISCOVER FINANCIAL SERVICES, a Delaware Corporation; DISCOVER BANK, a Delaware chartered bank; DFS SERVICES LLC, a Delaware limited liability company; and DISCOVER PRODUCTS, INC., a Utah corporation, ))))))) | |
| Defendants-Counterclaimants. )) | |

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

This is an insurance coverage dispute.  At issue is whether National Union Fire Insurance

Company of Pittsburgh, PA ("National Union") has a duty under its Advertising Injury coverage

to defend the Defendants-Counterclaimants (collectively, "Discover") in the patent infringement

lawsuit entitled *Phoenix, LLC, et al. v. Chase Manhattan Mortgage Corporation, et al*., filed in

the U.S.D.C., E.D. Texas, Marshall Division (Civil Action No. 2:07-cv-00387-TJW-CE) (the

"Phoenix Action").

Discover tendered the Phoenix Action to National Union under commercial umbrella

policies issued between 1998 and 2008.  The terms of the relevant policies are similar with

respect to the scope of Advertising Injury coverage.[1]  A duty to defend under the Advertising

---

[1]  The commercial umbrella policies issued between 2005 and 2008 do contain language different than those policies issued between 1998 and 2005.  Moreover, these policies specifically exclude from coverage Advertising Injury or Personal Injury and Advertising Injury arising out of patent infringement. By virtue of its counterclaim, National Union understands that Discover does not contend that National Union has a duty to defend under the 2005-2008 umbrella policies.

Injury coverage is not triggered unless, among other things: (1) the underlying lawsuit involves an enumerated Advertising Injury offense; (2) the lawsuit involves an insured's advertising activities; and (3) the insured's advertising activities were the sole cause of the underlying injury. As discussed below, the Phoenix Action does not satisfy these elements.

First, Phoenix LLC and LPL Licensing, LLC (collectively "Phoenix") do not seek damages for injury as the result of a specifically enumerated Advertising Injury offense. Patent infringement is not one of the enumerated offenses, and it does not otherwise fall within the scope of any of the enumerated Advertising Injury offenses. On the contrary, Illinois courts have overwhelmingly held that patent infringement claims do not trigger an insurer's duty to defend under a liability policy's "advertising injury" coverage.

Second, the Phoenix Action does not involve Discover's advertising activities. Under Illinois law, for purposes of "advertising injury" coverage, courts have found "advertising activities" to mean the widespread distribution of promotional materials to the public at large. Phoenix's patented technology does not facilitate a widespread distribution of promotional material directed to the public at large; instead, it facilitates a customer-specific communication narrowly designed to target the interests of a potential customer. Consequently, the use of such technology does not constitute advertising for insurance coverage purposes.

Finally, Phoenix's alleged injury does not "solely" arise out of Discover's "advertising activities," which requires nothing less than a showing that the insured's advertising was the "sole cause" of the alleged injury. Here, the alleged patent infringement was caused by Discover's use of the patented technology without a license, not by Discover's advertising activities.

## II.     BACKGROUND

### A.     The Phoenix Patent Infringement Action

Phoenix alleges that Discover willfully infringed the following three U.S. Patents (collectively, the "patented technology"):  Patent No. 5,987,434, entitled "Apparatus and Method for Transacting, Marketing and Sales of Financial Products" ("the '434 Patent"); Patent No. 6,076,072, entitled "Method and Apparatus Preparing Client Communications Involving Financial Products and Services" ("the '072 Patent"); and U.S. Patent No. 6,999,938, entitled "Automated Reply Generation Direct Marketing System" ("the '938 Patent").  (National Union's Separate Statement of Uncontroverted Facts ("NF"), ¶¶ 10-11).

Each of the patents claim an apparatus and method that uses client information to automatically select and present financial products appropriate for a specific client.  (Id. ¶ 17, ¶ 24, ¶¶ 28-29).  The technology analyzes and evaluates client information, determines and/or compares client needs with various available financial products to solve those needs, selects and/or recommends products most appropriate for the individual needs of each prospective client, and prepares personalized and individualized correspondence specifically tailored for each individual customer (or potential customer).  (Id. ¶¶ 16-17, ¶ 20, ¶¶ 23-24, ¶ 25).

Discover allegedly willfully and deliberately infringed the patented technology by manufacturing, importing, using, selling, or offering for sale products and services that infringe the patented technology and by contributing to or inducing others to infringe the patented technology without a license or Phoenix's permission.  (Id. ¶ 11).

### B.     The National Union Policies

Discover tendered the Phoenix Action to National Union under the National Union Policies.[2]  (Id. ¶ 31).  For purposes of Advertising Injury coverage, the terms in the National

---

[2]  The National Union Policies consist of the following policies:  BE 3578880, effective October 1, 1998

Union Policies (among them, Policy No. BE 357-88-80, the sole policy under which Discover seeks a declaration that National Union has a duty to defend Discover in the Phoenix Action in its Counterclaim) are identical to one another.  (NF, ¶ 33).  They provide that National Union will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay because of Advertising Injury (among other coverages) that takes place during the Policies Period and is caused by an Occurrence.  The policies also provide that National Union may, in certain instances, have a duty to defend.  (Id.  ¶ 33).

## III.    ARGUMENT

Summary judgment is proper when the pleadings and discovery, read in the light most favorable to the non-moving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed.R.Civ.P. 56(c).  When, as a matter of law, an insurance policy does not potentially cover a particular claim, an insurer has no duty to defend, and summary judgment may be awarded to the insurer.  *Zurich Ins. Co. v. Sunclipse, Inc*., 85 F. Supp. 2d 842, 848 (N.D. Ill. 2000).

For a duty to defend to exist:  (1) Discover's infringement of Phoenix's patented technology would first have to involve an enumerated Advertising Injury offense; (2) its alleged use of the patented technology would have to involve an "advertising activity"; and (3) Discover's advertising would have to be the sole cause of the infringement of the patented technology.  (NF, ¶ 35).  National Union is entitled to summary judgment that it has no duty to defend because there is no genuine issue as to any material fact that these requisite elements are not satisfied.

---

to October 1, 2001, and extended to October 1, 2002 by endorsement; BE 2195452, effective October 1, 2002 to October 1, 2003; BE 2977817, effective October 1, 2003 to October 1, 2004; and 2978252, effective October 1, 2004 to October 1, 2005.

**A.    The Phoenix Action Does Not Involve Any Enumerated "Advertising Injury" Offenses, Including a "Misappropriation of Advertising Ideas or a Style of Doing Business"**

As a threshold matter, no duty to defend Discover in the Phoenix Action exists because the alleged patent infringement does not involve an enumerated Advertising Injury offense. (NF, ¶ 35). Patent infringement is not among the enumerated Advertising Injury offenses. Indeed, one court found it "nonsense" to suppose that an insurance company would intend its insurance policy to cover patent infringement claims *sub silentio* when it expressly referred to the infringement of other intellectual property, such as copyrights, titles and slogans. *Owens-Brockway Glass Container, Inc. v. Int'l Ins. Co*., 884 F. Supp. 363, 367 (E.D. Cal. 1995) (*quoting Gencor Indus. v. Wausau Underwriters Ins. Co*., 857 F. Supp. 1560, 1564 (M.D. Fla. 1994)).

Nor do the offenses otherwise enumerated in the definition of Advertising Injury implicitly encompass patent infringement. On the contrary, Illinois courts have overwhelmingly held that patent infringement claims do not trigger an insurer's duty to defend under a liability policy's "advertising injury" coverage. *See, e.g., Discover Fin. Servs., LLC v. Nat'l Union Fire Ins. Co, of Pittsburgh, PA*, 527 F. Supp. 2d 806, 827 (N.D. Ill. 2007), appeal docketed, Case No. 08-2442 (7th Cir. June 11, 2008) (no coverage for patent infringement claim, even though patented technology could be used to transmit advertising); *Illinois Nat'l Ins. Co. v. Walgreens Co*., No. 07 CH 16703 (Cook County, Chancery Division July 8, 2008) (Opinion and Order attached in corresponding compendium of unpublished decisions)[3]; *Davila v. Arlasky*, 857 F.Supp. 1258, 1263 (N.D. Ill. 1994); *Greenwich Ins. Co. v. RPS Products, Inc*., 379 Ill.App.3d 78, 882 N.E.2d 1202, 1209, 318 Ill. Dec. 79, 86 (Ill. App Ct. 2008) (no potential for coverage for

---

[3]  This Court can take judicial notice of the referenced opinion and order pursuant to Federal Rule of Evidence 201.

patent infringement claim where advertisement did not instruct or explain to purchaser exactly how to recreate or reassemble infringing product).

Advertising Injury is defined as injury arising out of the following offenses: (1) oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's good, products or services; (2) oral or written publication of material that violates a person's right of privacy; (3) misappropriation of advertising ideas or style of doing business; and (4) infringement of copyright, title or slogan. (NF, ¶ 35). No potential for liability exists in the Phoenix Action under these offenses.

It is anticipated that Discover will attempt (as it has done in the past) to re-characterize Phoenix's patent infringement claims as claims for the "misappropriation of advertising ideas or style of doing business" (the "'misappropriation' offense).[4] Such efforts are not supported by Illinois law, however.

For purposes of the "misappropriation" offense, the phrase "style of doing business" refers to a company's comprehensive manner of business. *Winklevoss Consultants, Inc. v. Federal Ins. Co.*, 991 F. Supp. 1024, 1039 (N.D. Ill. 1998), *citing Owens-Brockway*, 884 F. Supp. at 369. Discover is not alleged to have misappropriated the comprehensive manner in which Phoenix operates its business. Understandably, as Discover and Phoenix engage in two completely different fields of business - Discover sells financial products; Phoenix licenses its patented technology. Phoenix contends only that Discover has infringed its patented technology. (NF, ¶ 11). Such allegations do not rise to the level of a misappropriation of a "style of doing business." Therefore, the Phoenix Action does not potentially involve the misappropriation of a "style of doing business."

---

[4] The Phoenix Action does not allege that Discover published slanderous or libelous material, published material that violated a person's right of privacy, or infringed another's copyright, title or slogan, and Discover does not contend otherwise in its Counterclaims.

The misappropriation of "advertising ideas" is, likewise, inapplicable to the Phoenix Action. In evaluating an insurer's obligations, the court should not look at the enumerated "advertising injury" offenses in isolation. Rather, it should construe the language "in light of the other terms that the policy lists in the definition of advertising injury." *Curtis-Universal, Inc. v. Sheboygan Emerg. Med. Servs., Inc.*, 43 F.3d 1119, 1124 (7th Cir. 1994). With this understanding, Illinois courts have found the scope of "advertising injury" coverage to apply to the content of the insured's advertising. *See, e.g., Curtis-Universal*, 43 F.3d at 1123-1124 (concluding enumerated offenses indicated coverage concerned harmful speech in various forms); *New Century Mortg. Corp. v. Great N. Ins. Co.*, 2006 WL 2088198, *6 (N.D. Ill. 2006) (observing policy's enumerated offenses indicated that "the policy contemplates injury arising from the content of the advertisement").

This rule of construction compelled one court to conclude that the "misappropriation" offense, likewise, concerned the elements of commercial speech because the other offenses enumerated in a policy's definition of "advertising injury" (which are identical to those contained in the National Union Policies) involved "wrongs clearly related to speech or information." *Flodine v. State Farm Ins. Co.*, 2001 WL 204786, *8 (N.D. Ill. 2001). With this understanding, the "misappropriation of advertising ideas" offense has been held to be potentially implicated where an insured uses the trademark of a competitor in its advertising, infringes upon the unique trade dress of a competitor's product in its advertising, or utilizes certain elements of a competitor's distinctive advertising style. Conversely, given its context, the offense is not interpreted to "cover wrongful takings that occur independently of advertising and are merely propagated, compounded, or contributed to by advertising, such as *patent infringement* or trade secret theft claims." *Flodine*, 2001 WL 204786, *8 (emphasis added).

Phoenix is not concerned with Discover's advertising content. It does not, for example, contend Discover has misappropriated Phoenix's trademark and wrongfully incorporated it into Discover's advertising materials. Nor does it not complain about representations contained in Discover's promotional text, logos or pictures. Phoenix cares only that Discover is using its patented methods without license. Significantly, this technology does not tell Discover how to sell its financial products or provide Discover the commercial content (*e.g.*, text, logo, or pictures) that will give Discover an edge against its competitors in the minds of the general public. The patented technology is, instead, a communication tool.[5] Phoenix claims a wrongful taking that occurred independently of advertising; it is therefore not the type of taking the "misappropriation" offense was designed to cover. *Flodine*, 2001 WL 204786, *8. Because Phoenix's infringement claims are not based on the content of Discover's commercial speech, they do not potentially implicate the "misappropriation" offense.

Additionally, the Phoenix Action does not potentially implicate the "misappropriation" offense because Phoenix is not Discover's competitor.[6] *Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co.*, 500 F.3d 640, 646 (7th Cir. 2007) (misappropriation of an advertising idea occurs "when the insured wrongfully takes a competitor's idea about the solicitation of business"). For this additional reason, the Phoenix Action does not potentially implicate the "misappropriation" offense. *See, e.g., Del Monte*, 500 F.3d at 646; *Heritage Mut. Ins. Co. v.*

---

[5] As further discussed in Section III.B., *infra*, the Phoenix technology is a patented method used to facilitate a one-on-one dialogue with a potential customer in order to provide that customer customized product information geared specifically towards that customer's purchasing interests. These customer specific communications do not constitute "advertising" for coverage purposes under Illinois law. Consequently, the technology that facilitates the proposal's preparation and transmittal can hardly be characterized as an "advertising idea."

[6] In fact, many of Discover's competitors in the financial services industry are named as its co-defendants in the patent infringement lawsuit filed by Phoenix. Specifically, the Phoenix Action names among Discover's co-defendants the following companies: JP Morgan Chase Bank, N.A.; Citibank, N.A.; Citibank USA, N.A.; Citibank (South Dakota), N.A.; Citigroup, Inc.; Citicorp Credit Services, Inc.; GMAC Bank; State Farm Bank, F.S.B. (NF, ¶ 9, ¶ 30).

*Advanced Polymer Tech. Inc.*, 97 F. Supp. 2d 913, 927 (S.D. Ind. 2000) (no duty to defend under "misappropriation" offense where underlying complaint lacked "essential" allegations that insured had absconded with elements of competitor's advertising).

Because there is no Illinois law to support an argument that Phoenix's patent infringement claims potentially trigger the "misappropriation" offense, Discover will likely rely heavily on a Washington appellate court decision to suggest that Phoenix's patented technology is an advertising idea because it has the capability of carrying promotional messages. *Amazon.com Int'l, Inc. v. American Dynasty Surplus Lines Ins. Co.*, 120 Wash. App. 610, 85 P.3d 974 (Wash. Ct. App. 2004). In *Amazon.com*, the court concluded under Washington law that the "misappropriation" offense encompassed the infringement of patented technology that facilitated the transmittal of what the court found to be advertising (specifically, pre-selected portions of music available for purchase on the insured's website). Nevertheless, any reliance Discover may place on *Amazon.com* is misplaced for several reasons.

First, the decision ignores the fact that patent infringement is not within the commonly understood meaning of "advertising idea" (or "style of doing business"). *Owens-Brockway Glass*, 884 F. Supp. at 367. Consequently, no exception for patent infringement claims should exist under "advertising injury" coverage.

Second, by ignoring the context of the enumerated "advertising injury" offenses, and focusing on whether the disputed technology could be used to *transmit* advertising, rather than on whether the claimant's injury was caused by advertising *content*, *Amazon.com* broadens coverage well beyond what any court applying Illinois law has recognized. Under *Amazon.com*'s rationale, any technology capable of transmitting advertising becomes an advertising idea: a fax machine that transmits a circular promoting a tanning salon's weekly specials; a chalkboard upon which a restaurant writes the special of the day; even a CTA bus that

promotes an upcoming movie on its side.  Neither Illinois law nor the policies' terms warrant

such a new and expansive interpretation of the "misappropriation" offense.[7]

Indeed, in an insurance coverage action involving some of the Discover parties now

before this Court, one Illinois court refused to engage in *Amazon.com*'s broad reading of the

"misappropriation" offense.  *Discover Fin. Servs., LLC*, 527 F. Supp. 2d at 824.  Refusing to

accept *Amazon.com*'s premise that certain technology constituted an "advertising idea" simply

because it could be used to transmit advertising, the *Discover* court observed that:

> [u]sing or selling automated telephone systems that have the ability to advertise
> goods or services or solicit business does not itself involve any elements of
> advertising.  In other words, the mere fact that [the insured's] allegedly infringing
> telephone systems, like many other technologies, are capable of advertising goods
> or carrying promotional messages, *does not transform the technology into an
> advertising idea*.

*Id.* (emphasis added).  The *Discover* court held that no duty to defend to defend Discover in the

underlying patent infringement action existed because there was no basis from which it could

conclude that the claimant's injury was due to any misappropriation occurring in the insured's

advertising elements.  *Id*.

Since *Discover*, one Illinois state court has likewise declined an insured's invitation that

it embrace *Amazon.com*'s broad reading of the "misappropriation" offense to find coverage for

patent infringement claims.  *Illinois Nat'l Ins. Co. v. Walgreens Co*., No. 07 CH 16703 (Cook

County, Chancery Division July 8, 2008).  In doing so, *Walgreens* agreed that a patented

technology's ability to transmit advertising did not transform the technology's infringement into

a "misappropriation of advertising ideas."  *Id*., p. 8.

---

[7]  In the four years since *Amazon.com*, there appears to be only one other court that followed its
unconventional reasoning.  *Amazon.com v. Atlantic Mutual Ins. Co*., 2005 WL 1711966, *9-10 (W.D.
Wash. 2005).  In doing so, however, the case before the Western District of Washington involved both
Amazon.com's website and the application of Washington law, just as the original Amazon.com decision
had.

More recently, the United States District Court for the Central District of California declined to follow *Amazon.com* and rejected an argument that National Union had a duty to defend patent infringement claims under the "misappropriation" offense. *Hyundai Motor America v. National Union Fire Ins. Co. of Pittsburgh, PA, et al.*, Case No. SACV 08-00020 JVS (RNBx), p. 7 (Opinion and Order attached in corresponding compendium of unpublished decisions).[8]

The third reason any reliance Discover might place on *Amazon.com* is misplaced is that the patented technology at issue in *Amazon.com* is distinguishable from Phoenix's technology. The *Amazon.com* patented technology enabled customers to preview pre-selected portions of songs available for purchase on *Amazon.com*'s website. 120 Wash. App. at 617, 85 P.3d at 977. The Phoenix technology, in contrast, is an automated means of facilitating customer correspondence. Consequently, the Phoenix technology is distinguishable.

In short, by seeking a defense in the Phoenix Action under the Advertising Injury coverage, Discover seeks to expand coverage (and the "misappropriation" offense, in particular) beyond that recognized under Illinois law. No duty to defend Discover in the Phoenix Action exists.

**B.    The Phoenix Action Does Not Involve "Advertising Activities" Because the Disputed Technology Facilitates Customer-Specific Communications Rather than the Widespread Distribution of Promotional Material to the Public.**

National Union also has no duty to defend with respect to the Phoenix Action because Phoenix's injury did not arise out of Discover's "advertising activities." Although there is no generally accepted definition of "advertising activity," Illinois courts have recognized in the duty to defend context that "advertising" refers to the widespread distribution of promotional material

---

[8]  This Court can take judicial notice of the referenced opinion and order pursuant to Federal Rule of Evidence 201.

to the public at large. *Davila*, 857 F.Supp. at 1262; *Int'l Ins. Co. v. Florists Mut. Ins. Co.*, 201 Ill. App. 3d 428, 433, 559 N.E.2d 7, 10, 147 Ill. Dec. 7, 10 (Ill. App. Ct. 1990), *Lexmark Int'l Inc. v. Transportation Ins. Co*., 327 Ill. App. 3d 128, 761 N.E.2d 1214, 1223, 260 Ill. Dec. 658, 667 (Ill. App. Ct. 2001).

In this instance, the patented technology does not facilitate a distribution of promotional material to the public at large. It is not, for example, a patented method for producing television or radio commercials or running newspaper or magazine advertisements. On the contrary, the patented technology is critical of the generic distribution of promotional material to the public at large because of its ineffectiveness.

For example, the '072 Patent observes that a "drawback" to traditional advertising "is the limited extent to which they personalize or individualize the communication." It observes that "generic ads or solicitations … merely present the product or service identically in every communication to every client" with less than effective results. (NF, ¶ 21). According to the '072 Patent, "[t]he extent to which the communications take into account the particular circumstances and needs of the individual prospective client, or provide individualized explanations necessary to make an informed purchasing decision about the highlighted products, or enough interest to make further inquiries which may lead to a sale, has been extremely limited or nonexistent." (NF, ¶ 22). The '434 and '938 are equally critical of traditional advertising. (NF, ¶ 15, ¶ 26).

As an alternative to "advertising," the Phoenix technology produces personalized and individualized communications to individual clients and/or prospective clients. To that end, the technology analyzes and evaluates client information, incorporates additional information, determines and/or compares client needs with various available financial products, and then selects and/or recommends products most appropriate for the individual needs of each

prospective client.  (NF, ¶¶ 16-19, ¶¶ 23-24, ¶ 25, ¶¶ 27-29).  It then prepares personalized and individualized communications specifically tailored for each individual.  (NF, ¶ 16, ¶ 23, ¶ 25).

Because the patented technology promulgates customer-specific communication rather than a widespread distribution of promotional material directed to the general public, it does not constitute "advertising" under Illinois law for purposes of the duty to defend.  *Zurich Ins. Co. v. Amcor Sunclipse North America*, 241 F.3d 605, 607-08 (7th Cir. 2001) (one-on-one solicitations of customers were not "advertising" that triggered duty to defend under "advertising injury" coverage); *Lexmark Int'l Inc.*, 761 N.E.2d at 1223, 260 Ill. Dec. at 667 (Ill. App. Ct. 2001) (expressing "doubts" that allegations that insured's promoting and marketing its alleged infringing printer to potential customers constituted advertising activity).  Therefore, National Union has no duty to defend Discover in the Phoenix Action under the National Union Policies on this additional basis.

### C.    Phoenix's Alleged Injury Did Not Arise "Solely Out of" Discover's Advertising Activities.

The National Union Policies also require the underlying injury to arise solely out of the named insured's advertising activities.  This "arising solely out of … advertising activities" provision is a "more rigorous requirement" than that found in other liability policies, *Discover*, 527 F.Supp.2d at 823, in that it requires nothing less than a showing that the insured's advertising be the "sole cause" of the alleged injury (in this case, the infringement of Phoenix's patents).  *Id.* at 820.  This requirement is not satisfied.

Discover's advertising did not cause (let alone "solely cause") Phoenix's patent infringement.  Rather, Phoenix's injury was caused by Discover's alleged use of the  patented technology without a license from Phoenix.  This unlicensed use of technology shares no causal connection with advertising because it is committed independent of advertising.  *Walgreens*, p. 10 (injury did not arise solely out of advertising where it was unlicensed use of patent technology

at issue); *Cf. Simply Fresh Fruit, Inc. v. The Continental Ins. Co*., 94 F.3d 1219, 1222 (9th Cir. 1996); *Microtec Research, Inc. v. Nationwide Mut. Ins. Co.*, 40 F.3d 968, 971 (9th Cir. 1994) (no duty to defend existed where injury caused by alleged misappropriation of claimant's software rather than insured's advertising).  Indeed, even when presented with infringement claims involving a patented proposal preparation system and computer-assisted sales methods under policies that contain a causal connection less rigorous than the "arising solely out of … advertising activities" requirement, the United States District Court for the Central District of California still concluded that National Union had no duty to defend because the claims involved the unlicensed use of patented technology.  *Hyundai Motor Am. v. National Union Fire Ins. Co. of Pittsburgh, PA, et al*., Case No. SACV 08-00020 JVS (RNBx), pp. 7-8.

Phoenix cares only that its technology is being used without permission and compensation.  The Phoenix Action is a business dispute over the unpermitted use of patented technology, not Advertising Injury *arising solely out of* Discover's advertising activities. Consequently, the Insurers have no duty to defend on this separate basis.

## IV.  CONCLUSION

WHEREFORE, National Union respectfully requests that this Honorable Court grant National Union's Motion for Summary judgment, and award National Union such other and further relief, both at law and in equity, to which it may show itself to be so entitled.

Dated:    September 8, 2008              Respectfully submitted,


                                         NATIONAL UNION FIRE INSURANCE
                                         COMPANY OF PITTSBURGH, PA


                                         By:  s/ Richard H. Nicolaides Jr._____
                                         One of Its Attorneys


Richard H. Nicolaides, Jr.

Daniel I. Graham, Jr.
BATES & CAREY LLP
191 North Wacker Drive - Suite 2400
Chicago, Illinois 60606
(312) 762-3100
(312) 762-3200 (fax)

265619 / 7378